**GOLDEN GATE AUDOBON SOCIETY, INC., et al., Plaintiffs,**

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

**No. C 87–6063 TEH.**

United States District Court, N.D. California.

July 31, 1989.

---

Alan Waltner and Thomas Roy Gorman, Gorman & Waltner, Oakland, Cal., and Zach Cowan, San Francisco, Cal., for plaintiffs.

Gail Cooper, U.S. E.P.A., Office of the Gen. Counsel, Karen L. Egbert, Environmental Defense Section, Benjamin F. Wilson, Don G. Scroggin, Brenda Mallory, Beveridge & Diamond, Donald A. Carr, Acting Asst. Atty. Gen., Karen L. Egbert, Thomas R. Lotterman, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., and Joseph P. Russoniello, U.S. Atty., and Francis B. Boone, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## ORDER

THELTON E. HENDERSON, District Judge.

On August 30, 1988, this Court found that plaintiffs were entitled to an interim award of attorney's fees against the United States Army Corps of Engineers (hereafter "Corps" or "defendants") under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), based on their success to date in this litigation. We also approved an hourly rate of $160 for plaintiffs' attorneys Alan Waltner and Roy Gorman. However, we directed the parties to meet and confer with respect to a reasonable number of compensable hours. Unfortunately, the parties were unable to resolve this matter; thus, we are now called upon to determine a reasonable fee award. In addition, plaintiffs urge the Court to make an additional finding relevant to the hourly rate issue in light of recent Ninth Circuit authority. Finally, they seek reconsideration of this Court's determination that plaintiffs are not entitled to fees against the Corps under the Clean Water Act, 33

U.S.C. § 1365. Each of these issues will be addressed in turn.[1]

## A. DETERMINATION OF REASONABLE ATTORNEY'S FEES

Under EAJA, the amount of fees to be awarded is calculated by multiplying the number of "reasonable hours times a reasonable market rate." *Int'l Woodworkers of America, AFL–CIO v. Donovan,* 792 F.2d 762, 765 (9th Cir.1985). In determining what is a "reasonable" number of hours, we consider those *Kerr* factors[2] that are relevant to this issue, namely: 1) the time and labor required, 2) the novelty and difficulty of the questions involved, 3) time limitations imposed by the circumstances, and 4) the results obtained. Hours which are duplicative, unproductive, excessive or otherwise unnecessary are non-compensable. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ The party seeking the award must also provide adequate documentation of the number of hours worked and the nature of the work performed. *Williams v. Alioto,* 625 F.2d 845, 849 (9th Cir.1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *Dennis v. Chang,* 611 F.2d 1302, 1308–09 (9th Cir.1980). Plaintiffs' records provide ample documentation to support their request. *Ackerman v. Western Electric Co., Inc.,* 643 F.Supp. 836, 863 *aff'd,* 860 F.2d 1514 (9th Cir.1988) (While other circuits require ... detailed, contemporaneous time records, the Ninth

Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award").

Plaintiffs seek $70,705.00 in fees (and $880.30 in costs)[3] for 593 hours spent litigating the merits, as well as their entitlement to, and the amount of, attorney's fees.[4] These hours can be broken down as follows: a) Alan Waltner, lead counsel: 323 hours, b) Roy Gorman, co-counsel: 28.25 hours, c) Dottie Lemiuex,[5] contract associate: 64 hours, d) Mary Decker, law clerk: 99.5 hours, e) Michael Miller, law clerk: 7.25 hours, and f) Deborah Benrubi, paralegal: 71 hours.

### 1. *Fees on the Merits*

#### a. *Summary judgment motion*

■ The Corps claims that the expenditure of 48.25 hours to prepare plaintiffs' partial summary judgment brief and supporting affidavits was excessive, given that portions of the brief and affidavits were taken from pleadings in another action. However, it does not follow that because plaintiffs were able to employ segments of existing pleadings (some of which they assisted in preparing), the hours requested for preparing their summary judgment motion must be automatically discounted. Rather, the question is whether it was reasonable to expend 48.25 hours to prepare plaintiffs' summary judgment brief (which addressed central issues in the case), given their utilization of existing pleadings. We conclude, based on this Court's experience,

---

1. The background and history of this case has been discussed in detail in this Court's prior orders. Thus, it will not be repeated here.

2. *See Kerr v. Screen Extras Guild,* 526 F.2d 67 (9th Cir.1976), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), wherein the Ninth Circuit adopted 12 criteria for determining an appropriate fee award.

3. The Corps has voiced no objection to the amount of costs requested.

4. These figures do not include the hours expended in connection with plaintiff's reply brief filed June 23, 1989 (*see* n. 9, *infra*). They do, however, reflect a voluntary elimination of 140.75 hours in the exercise of plaintiffs' billing judg-

ment, which constitutes almost 20% of the 733.-75 hours actually expended by plaintiffs.

5. While our August 30, 1988 order granting fees determined the $160 hourly rate for plaintiffs' primary counsel, we did not address the appropriate hourly rate for paralegals, law clerks, or contract associates. Plaintiffs seek an hourly rate of $60.00 for these persons. We agree that this is a reasonable hourly rate, and defendants do not take issue with it. *See Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (paralegals entitled to compensation at market rate). It is also the rate awarded plaintiffs for such persons in a recent state court action, *Airport Area Rights Committee v. City of Porterville,* in Tulare County, Civ. No. 127901.

and the complexity of the case and the issues raised, that the answer to this question is clearly yes. Indeed, had plaintiffs not had the opportunity or foresight to employ portions of the other brief, or utilize existing affidavits, we expect their hours would have considerably exceeded 48.25.

### b. *Pre-complaint hours*

Plaintiffs expended 38 hours between September 15, 1987 and the time they served the 60–day intent-to-sue notice on October 16, 1987. They expended an additional 58.75 hours between October 16th and the filing of the complaint on December 21, 1987. The Corps contends these hours are excessive; however, after reviewing the time sheets, and defendants' specific complaints, we conclude otherwise.

First, we note that plaintiffs have already exercised considerable billing judgment in this time period, excising 35.75 hours from their request.

Second, we reject defendants' assertion that plaintiffs should not be fully compensated for the 24.5 hours spent "reading the file." A review of the 12 items objected to (See. Defs' App. III), shows that these items involve much more than just "reading the file." We conclude that all twelve items represent time that was reasonably expended.

■ Third, defendants make the general objection that time spent reviewing unidentified documents should be discounted; they do not however, point to any particular "unidentified documents." Moreover, our review shows that plaintiffs have sufficiently identified the matters they reviewed. To extent that defendants are suggesting that plaintiffs should identify the exact title of, or describe in detail, every single piece of paper they review, we reject this approach as unduly burdensome and unnecessary.

■ Fourth, defendants complain that plaintiffs should not be compensated for time spent familiarizing themselves with an area of law, but rather such efforts should be absorbed in overhead. While we would not expect defendants to finance basic background lessons for plaintiffs' lawyers in whole areas of law with which they are unfamiliar, that is hardly the case here. For example, defendants object to item # 34 which identifies 45 minutes spent on reading various Clean Water Act cases. Plaintiffs' counsel are certainly entitled to (and in fact would be badly remiss if they did not) review case law relevant to the issues in this action. Defendants also point to item # 30 wherein a portion of 4.5 hours was spent reviewing Clear Water Act regulations (which are not a model of clarity) to spot issues relevant to the Distribution Center. Again, such research, directed to the specifics of the case, is clearly compensable.

■ Fifth, defendants complain that plaintiffs should receive no compensation for pre-complaint hours involving telephone calls and/or meetings with EPA, the Corps, and other individuals. In particular, defendants argue that discussions with EPA are noncompensable because fee awards are not allowed for time spent in administrative proceedings unnecessary to the commencement of the suit, citing *Webb v. Bd. of Education of Dyer County,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). This authority is inapposite as plaintiffs are not attempting to recover fees for time spent in any administrative *proceeding* unnecessary to the commencement of the suit. Plaintiffs' informal conversations with EPA regarding various aspects of this case appear completely appropriate and compensable.

■ Defendants also complain that plaintiffs' client representation agreements were not drafted until October 30, 1987, and December 16, 1987 and therefore any time spent prior to these dates is non-compensable. *See Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (hours not properly billed to one's client can not be billed to one's adversary). However, plaintiffs' counsel has an ongoing relationship with plaintiffs and the initial work on this case was undertaken pursuant to a verbal extension of an existing agreement. The time entries relating to the contract (for which no fees are sought)

simply reflect the memorializing of the verbal contract. Waltner Suppl. Decl. at 6, ¶ 11.

■ Sixth, defendants complain that time spent on two Freedom of Information Act requests should not be compensated because they were unnecessary given that "virtually all" of the information sought was a matter of public record in a prior suit. However, as defendants concede, not *all* the information sought was of record in the prior suit; in addition, it is unclear why it would not be reasonable for plaintiffs to believe that additional relevant information might not be revealed as a result of their FOIA requests.

#### c. *The February 24, 1988 letter*

■ Defendants argue that it was unreasonable for plaintiffs to expend 21 hours to prepare a 3 page settlement letter to the Corps. Preliminarily, we note that just because a letter is short does not necessarily mean that its contents did not require a significant amount of background preparation. Moreover, defendants have ignored plaintiffs' statement in their time summary that while the research undertaken prior to the drafting of the settlement letter was more detailed than necessary for that letter, it was retained for future use in the summary judgment motion. In addition, the research (which involved the substantial task of researching the legislative and regulatory history regarding the definition of wetlands), was undertaken by a new associate who spent 16 hours on the project (which included drafting a memorandum).[6] Perhaps her task could have been completed more quickly by someone more experienced; however, this factor is already accounted for by her relatively low hourly rate ($60/hour). Thus, we do not find that the 21 hours should be reduced on grounds of excessiveness.

#### d. *Redundant hours*

■ Defendants claim that plaintiffs have requested compensation twice for time spent filing and serving the same document, pointing to items #254 and 259. Plaintiffs explain that the filing entries refer to two separate documents, a brief filed Monday, June 6, 1988, and a brief filed Tuesday, June 7, 1988. The Court suspects that both briefs were due on Monday June 6, 1988. Briefs are generally due on Mondays given that this Court conducts its Civil Law and Motion calendar on Mondays. Thus, if both briefs should have been filed and served on Monday, plaintiffs should not recover for a second filing the following day. Thus, Dottie Lemiuex's time will be reduced by 2.25 hours.[7]

■ Defendants also complain that three items constituting 3.5 of Roy Gorman's 28.25 claimed hours are duplicative of Alan Waltner's efforts. Defendants do not specifically identify why two of the items were duplicative. With respect to the third, they complain that Gorman should not be compensated for 1.75 hours spent appearing in court on plaintiffs' partial summary judgment motion because he did not make any distinct contribution to the hearing. Plaintiffs, however, state that Gorman did assist Waltner by "outlining notes prepared on the spot for Mr. Waltner." They also note that defendants were represented *at the hearing* by two Department of Justice attorneys, an EPA attorney, and three Port of Oakland attorneys. While the Court will not compensate a plaintiff for excessively staffing a case at argument, we believe that Gorman's presence and assistance was reasonably justified, particularly given that defendants apparently felt that six attorneys were necessary to accommodate their needs. Finally, we note that while Gorman expended 62 hours on this case, he is only seeking compensation for 33.75 hours. Thus, considerable billing judgment has already been exercised with respect to Gorman's hours. The Court will not omit the 3.5 hours set forth in Defs' App. VII.

---

6. The remaining 5 hours were primarily spent by Alan Waltner reviewing the associate's work and drafting the settlement letter.

7. If, however, the Court's assumptions are incorrect, plaintiffs may request a reconsideration of this determination.

**1020**

### e. *Non productive work*

■ Defendants complain that item # 39 ("Draft client memo discussing case options and case funding") is for nonproductive work. Specifically, they contend that plaintiffs can not recover for time spent preparing that portion of the memo which discussed "case funding." Plaintiffs have not justified why such time is compensable in light of defendants' objection. Thus, on the assumption that one half of the preparation time was devoted to the case funding issue, we will reduce this item (1.75 hours) by 50 percent.

■ Defendants also seek elimination of .25 hours claimed for a conference concerning Weinberger's declaration, because Weinberger never filed a declaration in this action (item # 239). While, plaintiffs are not required to use every piece of evidence or pursue every theory that is investigated or considered, plaintiffs have neglected to explain how this expenditure of time contributed to the case, and it is not apparent from the face of the entry. In addition, we note that plaintiffs are not seeking compensation for item # 236 which identifies .50 hours spent "meeting with Mark Weinberger re: potential declaration." Accordingly, plaintiffs' request will be reduced by .25 hours.

■ Finally, defendants urge reduction of .25 hours spent in conversation with a state deputy attorney general because the state is not a party and this action raises no state law issues (item # 126). While we agree that plaintiffs are not entitled to compensation for legal expenses unrelated to the litigation, the mere fact that the state is not a party and that state law issues are absent here does not preclude the conversation from being related to this action. The time sheet description reads "Tele conf ... re progress of case and coordination of various actions." Given the State Attorney General's direct involvement in related state and federal actions involving the Oakland Airport and the Distribution Center, we conclude that a 15 minute conversation to coordinate this complex and multi-court litigation was sufficiently related to this action to warrant compensation.

### f. *Time attributable to litigating against the Port*

■ The Corps identifies 16 hours as time spent litigating solely against the Port of Oakland and an additional 170 hours as time spent litigating against both the Corps and the Port of Oakland. It contends that the former-hours must be eliminated entirely and that the latter hours should be reduced by 50 percent.

In *Nat'l Wildlife Federation v. Hanson*, 623 F.Supp. 1539 (E.D.N.C.1985), *aff'd*, 859 F.2d 313 (4th Cir.1988), a case involving the Clean Water Act, the district court awarded all of plaintiffs' fees against the government, although a portion of plaintiffs' hours were attributable to litigating against private parties. On appeal, the Fourth Circuit rejected the government's argument that requiring it to pay the entire award was in error and a violation of principles of sovereign immunity; rather, it concluded that:

> Prulean and Peat Methanol [the private parties] both had a stake in the outcome of this litigation and they sought to protect their interests. That fact does not warrant the assessment of attorneys fees against them, for if the Corps had fulfilled its duty to make a reasoned wetland determination or if the Administrator of EPA had performed his duty the litigation would never have ensured. The district court did not err in declining to charge a portion of the fee award to Prulean and Peat Methanol.

859 F.2d at 319.

Similarly here, it is the Corps' improper actions that are at the core of this action and which provided the direct impetus for the Port of Oakland to strenuously litigate the validity of the Corps' jurisdictional disclaimer. Because almost all of the litigation to date has focused on the Corps' decision to disclaim jurisdiction we conclude that it is appropriate for the Corps to compensate plaintiffs for time spent on this central issue although the Port may have pressed different points than did the Corps.

While it would be within our discretion to allocate fees based on a general assessment of the time spent litigating against each defendant, *see Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125–26 (9th Cir.1981), at this stage of the litigation, we do not think such a division would be the most appropriate course. If the case is to be divided at this point, we agree with plaintiffs that it is most sensible to divide it into two phases: 1) review of the Corps' jurisdictional disclaimer and 2) the enforcement action addressing unlawful filling by the Port. For the reasons discussed above, we conclude that the Corps may be charged for the time expended on the first phase.[8]

We also note that the purpose of awarding interim fees is to maintain an equal position among the parties and to ensure that plaintiffs can continue actively pursuing the litigation. Otherwise, defendants could attempt to prevail through a war of attrition. *See Rosenfeld v. United States*, 859 F.2d 717, 721 (9th Cir.1988) (a purpose of interim fees is to enable a meritorious suit to continue). Compensating plaintiffs at this stage, for all of their work in connection with the Corps' jurisdictional disclaimer, promotes this purpose. We reserve the right, however, to reallocate liability to the Port of Oakland, for some or all of the hours at issue, should further proceedings indicate that such a reallocation is warranted.

### 2. *Fees on Fees*

It is well settled that a plaintiff entitled to fees on the merits is also entitled to compensation for time expended on the fee application. *See e.g., Manhart v. City of Los Angeles*, 652 F.2d 904, 909 (9th Cir.

1981), *vacated and remanded on other grounds*, 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983) ("It would be inconsistent to dilute an award of fees by refusing to compensate an attorney for time spent to establish a reasonable fee"); *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702, 708 (2nd Cir.1987). Of course the time spent on the fee application must be reasonable; "[i]f counsel makes inflated or outrageous fee demands, the court could readily deny compensation for time spent in pressing them, since that time would not have been 'reasonably spent.'" *Trichilo*, 823 F.2d at 708.

■ Defendants do not contend that any specific time entry relating to attorney's fees is excessive or unreasonable in light of the task performed; rather, they simply make the sweeping assertion that the amount requested is excessive in relation to the amount requested for the merits, and therefore should be reduced by at least 50 percent. However, as at least one court of appeals has commented, this type of summary opposition is unpersuasive:

> Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high.

*Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1338 (D.C.Cir.1982) (per curiam) (concurring opinion).

■ Admittedly, the time expended on the fees litigation is beginning to approach the time spent on the merits.[9] However,

---

**8.** However, time spent on the enforcement aspect of the action (3.5 attorney hours and 2.875 paralegal hours—½ of items #70, 77, 84, 102, 103, and 104), will be excluded.

**9.** Plaintiffs seek compensation for 154 attorney hours and 132 paralegal and law clerk hours through May of 1989 (for a total of $32,560). An additional 24 attorney hours and 24.6 paralegal hours were expended on the last reply brief and supporting declarations, filed June 23, 1989 (for a total of $5,316). This latter total is based on Exh. C to Waltner's supplemental declara-

tion, filed June 23, 1989, with the correction that item #435 should read $6.00 instead of $10.00. We also note that for certain items Waltner is listed as the person performing the task but has been billed at the lower rate of $60.00. (*see e.g.* items #441, 447, 448 and 455) This is presumably because the tasks included (although perhaps did not exclusively involve) tasks which could have been performed by a law clerk or paralegal. These hours have been counted as *non-attorney* hours. Such billing discretion by plaintiffs is commendable and is

we reject the notion that somehow this mandates an automatic reduction of fees. As with the merits, the pertinent inquiry is always what is a *reasonable* number of hours in light of the issues and tasks involved. Rigid comparisons with the amount of fees for the merits shed little light on the answer to this question.[10]

■ Here, we conclude that the number of hours requested by plaintiffs for litigating the fee issues falls well within the rule of reason. First, we note that this interim fee application against multiple defendants is not a simple, garden variety fee application. *Cf. Farris v. Cox*, 508 F.Supp. 222, 227 (N.D.Cal.1981) (denying "grossly inflated" 76.1 hour request for preparing a short "boiler plate" fee application and routine declarations). Rather, plaintiffs' and defendants' papers raised difficult issues concerning entitlement and allocation, as well as numerous issues relating to the appropriate amount of fees. Second, plaintiffs were required to file five briefs on fees issues.[11] Third, by intensively litigating the fee application, defendants caused plaintiffs to expend significantly more time on fee issues than would have otherwise been required. Defendants are certainly entitled to litigate a fee petition with vigor, but they cannot be heard to complain if that vigorous advocacy requires plaintiffs to expend substantial amounts of time in

response. Finally, as noted above, defendants neglected to point to any specific instance where plaintiffs expended an unreasonable number of hours for a given task, relying instead on a simplistic "blanket" objection. In light of all of the above, we find that the number of hours claimed for litigating the fee application is reasonable and should not be discounted.[12]

## B. REQUEST FOR ADDITIONAL FINDING IN SUPPORT OF THE HOURLY RATE

In our August 30, 1989 order granting fees we found that "the limited availability of qualified attorneys for the proceeding involved" justified exceeding the $75.00 hourly rate cap provided by EAJA. 28 U.S.C. § 2412(d)(2)(A)(ii); *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Specifically, we found that attorneys Waltner and Gorman possessed specialized expertise in environmental law and that this expertise was necessary for the litigation. Order at 10–11.

Recent cases interpreting *Pierce*, however, suggest that in addition to finding that specialized expertise was necessary for the litigation, and that the fee applicants possessed such expertise, the Court must also find that there were no other attorneys in the specialized area willing to accept the case at the statutory rate. *See*

---

illustrative of what the Court concludes has been plaintiffs' reasonable approach to fees in general.

**10.** Indeed it is conceivable that in some instances, the fees for fees could exceed the fees on merits, for example, where a suit was resolved at a very early stage but the fee petition presented difficult and time consuming issues.

**11.** These included a) Plaintiffs' cross-motion for interim fees and costs, b) Plaintiffs' reply memorandum, c) Plaintiffs' memorandum in response to the Court's order for supplemental briefing, d) plaintiffs' motion for determination of reasonable attorneys fees (concerning the amount of fees), and e) Plaintiffs' reply brief.

**12.** We note that on June 6, 1988, when plaintiffs originally sought fees, they requested compensation in the amount of $43,420. Ironically, that portion of plaintiffs' current claim *not* challenged by federal defendants amounts to $34,012, nearly 80% of the original claim. Thus, in

retrospect, it appears that by intensively litigating the fee petition, federal defendants caused plaintiffs to incur approximately $31,000 in additional expenses (to say nothing of the significant portions of defendants' *and* the court's time that were also consumed) in order to potentially save approximately $9,408.

Unnecessarily protracted and extensive litigation over fees is uniformly discouraged by the courts. As one appeals court has observed, "the zeal of government counsel [should not] be permitted to require applicants to expend substantial additional time supporting fee claims which will only result in a request for more compensation for these additional labors." *Na'tl Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1329 (D.C.Cir.1982). *See also, Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988) (a "'request for attorney's fees should not result in a second major litigation'"). Unfortunately, it does not appear that these admonitions have been heeded by defendants here.

*Pirus v. Bowen,* 869 F.2d 536 (9th Cir. 1989); *Animal Lovers Volunteer Association v. Carlucci,* 867 F.2d 1224 (9th Cir. 1989).

In light of this authority, plaintiffs request that we make the additional finding that plaintiffs could not have found alternative counsel with the necessary expertise who would have been willing to take this case at EAJA's $75.00 statutory rate. We conclude that such a finding is appropriate and supported. The number of plaintiff-side environmental attorneys possessing the required expertise necessary for this case in this locale is minuscule, and this Court is satisfied that no such counsel would have agreed to litigate this case at the statutory rate of $75.00. *See* Declarations of Roger Beers, Zach Cowan, and Alan Waltner.

 Defendants argue that we should refuse to make such a finding at this late date because Fed.R.Civ.P. 60(b)(1), which presents an "apt analogy," only permits a court to relieve a party from a final judgment for mistake, inadvertence or excusable neglect. This argument is specious. It is beyond question that courts have complete discretion to modify interim orders at any time before final judgment for any appropriate reason. Intervening Ninth Circuit authority certainly warrants exercising this discretion.

 Defendants also argue that we should not find that the availability of environmental attorneys is limited because the 1989 edition of Martindale and Hubbell contains numerous law firms in the San Francisco Bay Area that list environmental law as a special area of expertise. *See* Huntington Decl. at 2–3. As defendants must well know, such a list is meaningless because almost all of those listed are corporate law firms that service defendants, not plaintiffs, in environmental litigation. Thus, they can not realistically be considered as expanding the number of attorneys available to plaintiffs. *See* Waltner Suppl. Decl. at ¶ 6. Moreover, federal defendants do not even suggest that any of these firms would have been willing to represent plaintiffs at the $75/hour statutory rate.[13]

---

**13.** In a footnote, defendants also suggest that should this Court accept plaintiffs' invitation to make an additional finding, we should also reconsider our determination that plaintiffs are prevailing parties, citing *Nat'l Wildlife Federation v. Federal Energy Regulatory Comm'n [FERC],* 870 F.2d 542 (9th Cir.1989), and *Hammock v. Bowen,* 867 F.2d 1209 (9th Cir.1989).

However, we do not read *Nat'l Wildlife Federation,* as do defendants, to automatically preclude prevailing party status in cases of remand. *See* defendants' June 12, 1989 opposition at 7, n. 4. In that case, the Court remanded a FERC determination, stating that it could not even determine, on the record, whether FERC's decision was arbitrary and capricious. Under those circumstances, plaintiffs were not eligible for fees as prevailing parties. However, the Court also found that plaintiffs were prevailing parties entitled to fee award with respect to another claim, which although remanded, resulted in a substantive ruling of statutory interpretation which had significance beyond the particular case.

The determination that the instant plaintiffs are prevailing parties is clearly consistent with *Nat'l Wildlife Federation v. FERC.* Not only did we specifically find that the Corps' jurisdictional disclaimer was arbitrary and capricious, but more importantly, plaintiffs also won a favorable substantive ruling on the proper interpretation of the "normal circumstances" language of 33 C.F.R. 328.3(b). Moreover, this was a ruling of significance well beyond this case. Indeed, we specifically declared that the Corps' interpretation, if upheld, "would eviscerate a central goal of the Clean Water Act." June 21, 1988 order at 13. Finally, we did not remand simply for the compilation of additional evidence. Rather we expressly required the Corps to "reexamine the history of the site and make a wetlands determination in accordance with this Court's interpretation of the regulation" and to "closely examine the Huffman and Williams reports and seek the participation of plaintiffs in the remand proceedings." August 30, 1988 order at 9. In short, plaintiffs did not merely achieve "hollow" procedural relief; rather, they plainly achieved "some relief on the merits" as well.

We also reaffirm our belief that any determination as to what constitutes "success" in environmental litigation must take into account that many environmental laws mandate "procedures" rather than "results." Indeed, environmental litigation is generally undertaken to force the relevant agency to properly perform its statutory responsibilities. Thus, although a remand may appear to be a hollow procedural victory in another context (e.g. a social security case) it is of considerably more significance in the environmental context. *See Nat'l Wildlife Federation v. Hanson,* 859 F.2d at 316–17, find-

**1024**

### C. REQUEST FOR RECONSIDERATION OF ENTITLEMENT TO FEES UNDER THE CLEAN WATER ACT

Plaintiffs request reconsideration of our determination that they are not entitled to recover attorney's fees against the Corps under the Clean Water Act in light of the Fourth Circuit's decision in *National Wildlife Federation v. Hanson,* 859 F.2d 313 (4th Cir.1988). However, as defendants point out, this Court had the benefit of the lower court's opinion in that case when we made our earlier determination. We decline to reconsider that decision now.

Accordingly, and good cause appearing, and after careful consideration of the parties' papers and supporting documents, it is HEREBY ORDERED that plaintiffs' motion for determination of reasonable attorney's fees is GRANTED as follows:

1. The findings supporting an award of interim attorney's fees under the Equal Access to Justice Act, set forth in this Court's August 30, 1988 order granting fees, are hereby affirmed. In addition, plaintiffs have sufficiently demonstrated that there were no other attorneys in this locale in the specialized plaintiffs environmental bar willing to accept this case at the statutory fee limits imposed under the Equal Access to Justice Act.

2. Plaintiffs are entitled to an award of interim attorney fees in the lodestar amount of $74,973.50 based on the following reasonable number of hours and hourly rates:

 a. 370.625 attorney hours at $160/hour ($59,300)

 b. 261.225 paralegal, law clerk, and contract attorney hours at $60/hour ($15,673.50)

3. Nothing in this order shall be construed as precluding plaintiffs from requesting a multiplier in any subsequent fee application for the time covered in this application.

4. The United States Army Corps of Engineers shall pay plaintiffs interim litigation expenses in the amount of $74,973.50.00 and taxable costs in the amount of $880.30.

It is FURTHER ORDERED that plaintiffs' motion for reconsideration of the entitlement approach is DENIED.

IT IS SO ORDERED.

---

ing that for purposes of prevailing party status, traditional civil plaintiffs must be distinguished from environmental plaintiffs: "Unlike plaintiffs in traditional civil actions, plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no financial benefit if they win. Agency 'liability' is not at issue. What is at issue here [is whether the Corps properly performed its duties]. The NWF

[plaintiffs] successfully demonstrated in this that the Corps did not … Whether or not the Corps and EPA ultimately determine that tract 1 is wetlands, the NWF will still have served a key purpose of the citizen suit provision which is *to* ensure that the agencies fulfill their duties under the CWA responsibly."