Curtis SNEEDE, by his guardian ad litem Georgia THOMPSON; Justin Thompson, by his guardian ad litem Georgia Thompson; Georgia Thompson, on her own behalf and as representative of her sons Curtis Sneede and Justin Thompson, Plaintiffs,

v.

Molly COYE, M.D. Director, California Department of Health Services; California Dep't of Health Services; Thomas Hayes, Director, California Department of Finance; California Department of Finance; Louis W. Sullivan, M.D., Secretary, United States Department of Health and Human Services; United States Dep't of Health and Human Services, Defendants.

Molly COYE, M.D. et al., Defendants and Third Party Plaintiffs,

v.

Louis W. SULLIVAN, M.D., Secretary, United States Department of Health and Human Services, Third Party Defendant.

No. C89–1932 TEH.

United States District Court, N.D. California.

March 3, 1994.

Evelyn R. Frank, Legal Aid Soc., of Alameda County, Oakland, CA, Stanley L. Dorn, Jane Perkins, Mark Regan, Nat. Health Law Prog., Inc., Los Angeles, CA, for plaintiff.

Stephen L. Schirle, George C. Stoll, U.S. Atty's. Office, Stephanie Wald, Daniel E. Lungren, Ralph Johnson, John K. Van De Kamp, Atty. Gen., CA State Atty. Gen. Office, San Francisco, CA, for defendants.

### ORDER GRANTING ATTORNEYS' FEES AND COSTS

THELTON E. HENDERSON, Chief Judge.

This matter comes before the Court on the plaintiffs' Motion for Attorneys' Fees and Costs against the Federal defendants [1] under 28 U.S.C. §§ 2412(b) and (d) of the Equal Access to Justice Act ("EAJA"). In light of this Court's ruling, filed concurrently herewith, denying plaintiffs' Motion for Leave to File a Corrected Second Amended Complaint, the Court denies plaintiffs' request for fees under 28 U.S.C. § 2412(b). However, having carefully considered the parties' papers, supporting documentation, and the record herein, the Court grants plaintiffs' request for attorneys' fees and costs under 28 U.S.C. § 2412(d) and directs the parties to proceed as set forth below.

1. Plaintiffs and State defendants have settled the question of attorneys' fees and costs. Thus, plaintiffs' motion is currently directed toward the Federal defendants only.

## I.

■ Under EAJA, prevailing plaintiffs are entitled to recover their attorneys' fees and costs unless the government's position was substantially justified, special circumstances would make an award unjust, or the application for fees is not timely filed. 28 U.S.C. §§ 2412(d)(1)(A), (1)(B); *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 158–60, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990); *Oregon Natural Resources Council v. Madigan,* 980 F.2d 1330, 1331 (9th Cir.1992); *Thomas v. Peterson,* 841 F.2d 332, 335 (9th Cir.1988) ("EAJA creates a presumption that fees will be awarded unless the government's position was substantially justified"). Once a court finds that a party is entitled to attorneys' fees, it must then determine a reasonable fee. This inquiry focuses on the reasonable number of hours expended and the appropriate hourly rate.

We first address the requirements for establishing eligibility for fees under EAJA, and second, the issue of a reasonable fee.

## II.

### *ENTITLEMENT TO FEES*

#### 1. Prevailing Party

■ A plaintiff qualifies as a prevailing party if she succeeds on " 'any significant issue in the litigation which achieve[d] some of the benefit the parties sought in bringing the suit.' " *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). In this case, there is no dispute that plaintiffs have "prevailed." Their complaint asserted that the state of California was engaging in unlawful deeming practices, in determining eligibility for Medi-Cal, in violation of 42 U.S.C. § 1396a(a)(17)(D), and that the United States Department of Health and Human Services was permitting or requiring such unlawful policies throughout the Ninth Circuit.

After obtaining certification of a California, and later, a Ninth Circuit-wide class, plaintiffs prevailed against both the State and Federal defendants. On January 5, 1990, we granted a partial summary judgment against the State of California, finding that it was unlawfully relying on improperly deemed income and resources to reduce or deny eligibility for Medi-Cal benefits. On December 11, 1990, we extended this ruling to the Federal defendants, finding that they were permitting or requiring such unlawful deeming throughout the Ninth Circuit.

Plaintiffs were also highly successful at the remedial stage, which raised a number of highly complex and novel issues regarding compliance. As a result of this Court's remedial rulings, California has revised its eligibility procedures, with respect to deeming, and the Federal defendants have provided all States within the Ninth Circuit with extremely detailed instructions regarding how to develop deeming policies that are consistent with the dictates of the Medicaid Act, as set forth in 42 U.S.C. § 1396a(a)(17)(D).

The end result is that plaintiffs achieved very significant benefits for thousands of applicants who would otherwise be denied needed medical benefits. *See* Wulsin Decl. at ¶ 6 ("the court's decisions will have a significant impact on the financial circumstances of [Medi–Cal] recipients throughout the State, allowing them to obtain needed medical care that they could not have obtained absent the relief that the decision ensures"); *Bird* Decl. at ¶ 6 ("The results of the *Sneede* [*by Thompson v. Kizer,* 728 F.Supp. 607 (N.D.Cal.1990) ] case have been extremely important in California, based upon the comments and responses I have observed from advocates at our Statewide task force meetings ... [At such meetings] advocates volunteered that the new *Sneede* rules had been of remarkable benefit to their clients").

#### 2. Substantial Justification

■ Once we determine that the plaintiffs are the prevailing party, it is the government's burden to demonstrate that fees should nonetheless be denied because the "position" of the United States was "substantially justified." *Oregon Natural Resources Council,* 980 F.2d at 1331.

■ The "position" of the United States refers to the agency's underlying position—

i.e. the agency action or inaction upon which the litigation is based—and the agency's litigation position. *Id.* at 1331; *Thomas,* 841 F.2d at 334-5. Thus, a finding that "either the government's underlying conduct or its litigation position was not substantially justified is sufficient to support an award of EAJA fees." *Cervantez v. Sullivan,* 739 F.Supp. 517, 521 (E.D.Cal.1990). *See also Jean,* 496 U.S. at 159, n. 7, 110 S.Ct. at 2319, n. 7 (Congressional intent is to provide for fees when an unjustifiable agency action forces litigation, but then the agency tries to avoid liability by reasonable behavior during the litigation); *Andrew v. Bowen,* 837 F.2d 875, 880 (9th Cir.1988).

■ The term "substantial justification" requires the agency to "show that its position has a reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *Abela v. Gustafson,* 888 F.2d 1258, 1264 (9th Cir.1989). This means " 'of course, more than merely undeserving of sanctions for frivolousness.' " *Jean,* 496 U.S. at 158, n. 6, 110 S.Ct. at 2319, n. 6.

■ The underlying conduct at issue here is the decision of the Secretary of Health and Human Services to issue his August 1989 transmittal, which permitted or required State Medicaid agencies to promulgate regulations that violated the unambiguous terms of the Medicaid statute, as set forth in 42 U.S.C. § 1396a(a)(17)(D). We readily agree with plaintiffs that this underlying conduct lacked any reasonable basis in either law or fact, and thus can not be "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565-66, 108 S.Ct. at 2550.

■ As we previously held, the statutory language at issue in this case could hardly be more plain or unambiguous. In no uncertain terms, it prohibits the Secretary from deeming income from persons outside the spousal or parent-child relationship. *See Sneede,* 728 F.Supp. 607, 609-10 (N.D.Cal. 1990); A long line of other courts have unanimously reached the same conclusion, including the Ninth Circuit Court of Appeals. *See Vance v. Hegstrom,* 793 F.2d 1018 (9th Cir. 1986) ("The **plain language** of subsection 17(D) explicitly prohibits the deeming of income from persons [outside the spousal or parent-child relationship]") (emphasis added); *Olson v. Norman,* 830 F.2d 811, 818 (8th Cir.1987) ("We join the other courts that have **unanimously rejected the Secretary's efforts to rewrite or ignore the clear language** of [§ 1396a(a)(17)(D) ]") (emphasis added); *Childress v. Sullivan,* 738 F.Supp. 1348, 1349-50 (D.Colo.1990) (government's interpretation of § 1396a(a)(17)(D) was not substantially justified in light of the "plain" language of (17)(D) and the government's "string of losses").[2]

Notwithstanding the above, the Secretary inexplicably and without ever proffering any reasonable justification, insisted on flouting § 1396a(a)(17)(D) in favor of a policy which permitted or required States to deem income outside the spousal or parent-child relationships.

Not surprisingly, federal defendants do not even attempt to defend the reasonableness of their underlying conduct on the merits. Instead, the Secretary falls back on blanket principles that have little persuasive force under the particular circumstances presented here. For example, the Secretary emphasizes that the Medicaid statute is renowned for its complexity. However, the simple fact that a federal statute is complex, as many are, does not shield the government from liability for fees. Moreover, the specific language at issue here was not difficult to interpret. Rather, as the courts have consistently agreed, it is "plain" and "unambiguous."

The government also seeks support from the fact that the general concept of "deeming" has been upheld by the Supreme Court

---

**2.** We recognize that the failure to prevail does not raise a presumption that the government's position was not substantially justified. *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988). Similarly, the fact that another court has disagreed with the defendant is not dispositive. *Pierce,* 487 U.S. at 569, 108 S.Ct. at 2552; However, where, as here, numerous courts have uniformly rejected the defendants' position, we may properly consider this in assessing the reasonableness of the government's position. *Id.* ("string of losses can be indicative" of lack of substantial justification); *Ramon–Sepulveda v. I.N.S.,* 863 F.2d 1458, 1460 (9th Cir.1988).

in other contexts. However the fact that deeming, as a general concept, has been upheld is simply beside the point. No one in this case has ever disputed that deeming can not occur in the proper context.

■ The government's final argument is that language in the Ninth Circuit's December 13, 1991 memorandum opinion shields it from any liability for fees. As explained below, however, this argument is equally unavailing.

Of the many rulings entered in this action, only one was appealed. That ruling, contained in an order issued June 8, 1990, concerned a narrow remedial issue (involving one step of the state of California's proposed method for determining the income and need of California's Medi-Cal Family Budge Units). As required by Ninth Circuit rules, plaintiffs included a statement in their appellate brief that they intended to seek attorney fees if they prevailed on appeal. Neither plaintiffs nor defendants briefed the issue of fees.

On December 13, 1991, the Ninth Circuit affirmed the Court's June 8, 1990 order on merits. At the same time, it also ruled that plaintiffs were not entitled to recover fees for the appeal under section 28 U.S.C. § 2412(d) because the government's position was substantially justified. Dec. 13, 1991 Memorandum Opin. at 10–11.

Federal defendants argue that under the "law of the case" doctrine, the Ninth Circuit's ruling prevents this Court from determining whether the government's underlying conduct was "substantially justified." The fatal flaw in this argument is that the only matter before the Court of Appeals, and the only matter considered, was a single issue concerning California's proposed remedial plan. *See* Memorandum Opin. at 1, n. 1 ("[T]he **only issue** presently before this Court is the propriety of the June 8 order") (emphasis added). Thus, the **only** "position" the Court of Appeals could have evaluated for "substantial justification" was the Secretary's litigation position regarding the June 8, 1990 order on appeal. Indeed, the Court of Appeals never once discusses or addresses the Secretary's underlying conduct in its decision.[3]

■ It is well settled that the Law of the Case doctrine only "operates to preclude a reexamination of issues of law decided on appeal, explicitly or by necessary implication." *Chapman v. Nat'l Aeronautics and Space Administration,* 736 F.2d 238, 240 (5th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984). Given the above, it is clear that the Ninth Circuit neither explicitly, nor by necessary implication, evaluated or passed judgment on the government's underlying conduct in this case. Accordingly, defendants' argument regarding the law of the case must be rejected.[4]

In sum, and for all the foregoing reasons, we conclude that the government has not met its burden of demonstrating that its underlying position, which necessitated this litigation, was substantially justified, "that is, justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. Indeed, there are few cases in which this Court could imagine the government's underlying conduct having less justification than in the instant case.[5]

3. As Federal defendants emphasize, the Court of Appeals makes note of the Court's January 5, 1990 Order in its opinion. However, it only does so in the context of reciting the history of the case—not to discuss its merits or the reasonableness of the Federal defendants' underlying conduct.

4. In *Jean,* the Supreme Court held that once a court makes a threshold determination regarding substantial justification, or lack thereof, that determination governs the entire action. 496 U.S. at 160, 110 S.Ct. at 2320. Federal defendants latch on to this holding to suggest that the Ninth Circuit has made such a threshold determination which governs this entire case. However, it is quite clear that *Jean* contemplates that this "threshold" determination shall be made in the context of the entire case, and take into consideration, if not focus on, the government's underlying conduct. *Id.* at 164–66, 110 S.Ct. at 2322–23. Clearly, the Ninth Circuit's limited determination, regarding the government's litigation position with respect to a particular issue on appeal, did not undertake the type of "threshold" determination contemplated in *Jean.*

5. Given the above, it is not necessary to also inquire into the Federal defendants' litigation position. We note, however, that while certain of the Federal defendants' litigation positions, particularly during the remedial phase, may have had a reasonable basis, we can not say the same

■ The determination that the government's prelitigation position was not substantially justified acts as a "one-time threshold for fee eligibility." *Jean*, 496 U.S. at 160, 110 S.Ct. at 2320. Thus, plaintiffs are presumptively entitled to a fee award which "encompasses all aspects of the civil action," absent some unreasonably dilatory conduct by the prevailing party on any portion of the action, which is not a factor here. *Id. see also, id.* at 166, 110 S.Ct. at 2322 ("The purpose and legislative history of the statute reinforce our conclusion that Congress intended EAJA to cover the cost of all phases of successful civil litigation addressed by the statute"). Accordingly, plaintiffs are presumptively entitled to recover for all phases of this litigation.[6]

### 3. Special Circumstances

■ A court may deny fees to a prevailing party even where the government's position was not substantially justified, if special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). This provision, however, should only be invoked with caution. *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir.1985); *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir.

1985) (special circumstances exception should be narrowly construed). Federal defendants do not point to any special circumstances that would make an award unjust in this case, and we find none either.

### 4. Timeliness of Application

■ Under 28 U.S.C. § 2412(d), the plaintiff must submit an application for attorneys' fees within 30 days of final judgment. This is a mandatory, jurisdictional condition. *Shalala v. Schaefer*, — U.S. —, —, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993); *Olson*, 830 F.2d at 821.

■ Defendants contend that plaintiffs' request for fees is untimely because it was not filed within 30 days of this Court's December 11, 1990 order, which extended the Court's earlier ruling against the State defendants to the Federal defendants. Alternatively, Defendants argue that the application should have been filed within 30 days of February 26, 1991, which is the date that the appeal from the December 11, 1990 order was dismissed. Both arguments are meritless since the December 11, 1991 order was clearly not a final judgment. *Melkonyan v. Sullivan*, 501 U.S. 89, 95–96, 111 S.Ct. 2157,

---

for others. For example, in the early stages of the case, Federal defendants sought to indefinitely delay a ruling on the merits of plaintiffs' complaint, pending development of future regulations. This request was rejected as calling for a "lengthy and unnecessary delay." Indeed, it appears that the primary purpose of that request was to forestall what Federal defendants must have anticipated would be an unfavorable primary purpose of that request was to forestall what Federal defendants must have anticipated would be an unfavorable decision, given previous precedent in the Ninth Circuit and elsewhere. The Court did, however, delay pending proceedings for a limited time to allow Federal defendants additional time to participate. Federal defendants ultimately responded by declining to take any position with respect to the central liability issue raised by this case. *See, Sneede*, 728 F.Supp. at 608, n. 2.

**6.** As discussed above, the Ninth Circuit Court of Appeals found that the government's litigation position regarding the compliance issue raised by the Court's June 8, 1990 order was "substantially justified." This raises the question whether fees may nonetheless be awarded for either "federal" or "joint state-federal" time expended on this particular matter.

In *Jean*, the Supreme Court noted that any given civil action can have "numerous phases," and that the parties' postures "on individual matters may be more or less justified." 496 U.S. at 161, 110 S.Ct. at 2320. Nonetheless, cases should be treated as "an inclusive whole, rather than as atomized line items" for purposes of awarding fees under EAJA. *Id.*

The fact that the Ninth Circuit concluded that the government's litigation position on "one individual matter" was substantially justified clearly does not, as discussed above, preclude the Court from making the threshold substantial justification determination envisioned by the Supreme Court in *Jean*. On the other hand, the Ninth Circuit has specifically denied fees for time expended in defending the appeal of the June 8, 1990 order, and we are bound by that particular ruling. As such, we conclude that we have no choice but to exclude those specific hours that plaintiffs expended in opposing defendants' appeal of the June 8, 1990 order. Consistent with *Jean*, however, time spent on all other phases of the litigation, including time spent in the district court relating to matters at issue in the June 8, 1990 order shall be compensable.

**534**

2162, 115 L.Ed.2d 78 (1991); Fed.R.Civ.P. 58. Rather, we agree with plaintiffs that, if anything, the request for fees is premature. However, this does not preclude the Court from acting on the instant motion because fees may be awarded on an interim basis. *Golden Gate Audubon Society, Inc. v. U.S. Army Corps of Engineers,* 738 F.Supp. 339, 341 (N.D.Cal.1988).

## III.

### DETERMINATION OF A REASONABLE FEE

■ Where, as here, the plaintiffs have satisfied the conditions for recovering attorneys' fees under § 2412(d), we must determine what fee is "reasonable." The process for determining a reasonable fee under 28 U.S.C. § 2412(d) is the same as that followed in cases awarding fees under 42 U.S.C. § 1988. *Jean,* 496 U.S. at 161, 110 S.Ct. at 2320. ("once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley [v. Eckerhart* ]").

■ Accordingly, we must determine the number of hours reasonably expended in the litigation and multiply that figure by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983); *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1993). This figure, which is commonly referred to as the lodestar, may then be increased or decreased based on certain factors that are not subsumed within the initial calculation of the lodestar. *D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1383 (9th Cir. 1990). However, such upward or downward adjustments are "the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee." *Id.; Gates,* 987 F.2d at 1397.

7. Under *Jones, supra,* time spent on joint issues could be fully charged to one defendant, where the district court finds that the same amount of time would have been expended even if one defendant were involved. However, plaintiffs

### 1. Number of Reasonable Hours Expended

■ It is plaintiffs' burden to "document[ ] the appropriate hours expended in the litigation" by submitting evidence in support of those "hours worked." *Gates,* 987 F.2d at 1397. The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved, in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley,* 461 U.S. at 431, 103 S.Ct. at 1938. However, it does not include hours that are "excessive, redundant, or otherwise unnecessary because, for example, the case is overstaffed." *Id.* at 433, 437, 103 S.Ct. at 1939–40, 1941.

■ Plaintiffs have submitted detailed declarations and supporting time sheets demonstrating that they have spent a total of 1428 hours litigating the merits of this action. Under *Jones v. Espy,* 10 F.3d 690 (9th Cir. 1993), plaintiffs have allocated these hours between purely state, purely federal and joint state-federal matters. The hours set forth below represent those hours spent on purely federal matters and 50 percent of those hours spent on joint state-federal matters. Rubin Supp.Decl. ¶ 4–6 and Ex. A & C.[7]

| | Fed. Hrs | ½ Jt. Hrs | Total Hrs |
|---|---|---|---|
| Evelyn Frank | 443.45 | 87.53 | 530.98 |
| Michael Parks | 127.00 | 8.5 | 135.50 |
| Jane Perkins | 19.00 | 2.38 | 21.38 |
| Mark Regan | 31.50 | 4.0 | 35.50 |
| | | TOTAL: | 723.36 |

Having reviewed the affidavits submitted, and based on our familiarity with this case, we conclude that the total of 723.38 hours is eminently reasonable. Indeed, as discussed below, it is the specialized expertise and knowledge of counsel that enabled them to litigate this case in such an efficient fashion. *See* Finberg Decl. at ¶ 11 ("Ordinarily I would be amazed that such a difficult case could be litigated so efficiently but I know from experience that Evelyn Frank worked

properly exercised their billing judgment to seek only 50 percent of time spent on joint state-federal matters given that they have settled the question of fees with the State defendants.

with extraordinary speed and effectiveness"); Bird Decl. at ¶ 8.

The record also indicates that plaintiffs exercised considerable billing judgment and restraint. *See e.g.,* Parks Decl., at ¶ 3–4; Regan Decl. at ¶¶ 3–4; Ronfeldt Decl., at ¶ 5. Based on our review of the record, it does not appear that the above tally contains excessive, redundant or unnecessary hours. Finally, the number of hours sought are documented by contemporaneous time records maintained by plaintiffs. *See Hensley,* 461 U.S. at 437 and n. 12, 103 S.Ct. at 1941 and n. 12. Notably, defendants have raised no objection to the documentation of the hours requested or suggested that plaintiffs' request includes excessive or unnecessary hours. *See Gates,* 987 F.2d at 1397–98 (although fee applicant bears burden of documenting the appropriate hours expended, "the party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits").

Defendants, however, have not yet had an opportunity to respond to plaintiffs' allocation of hours between federal and state matters because such allocation was only provided in plaintiffs' reply brief in response to the Ninth Circuit's recent decision in *Jones v. Espy.* Accordingly, Federal defendants will be given an opportunity to comment on the reasonableness of the number of hours in light of the State–Federal allocation provided by plaintiffs.

**2. Reasonable Hourly Rate**

██ The EAJA provides that attorneys' fees shall not be awarded in excess of $75.00/ hour unless the court determines that "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In referring to "special factors," " 'Congress intended for courts to deviate from the statutory cap only if there was limited availability of "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question.' "

*Pirus v. Bowen,* 869 F.2d 536, 540 (9th Cir. 1989).

Based on the Court's experience with counsels' written and oral presentations in this case, its familiarity with the issues raised therein, and the declarations submitted with plaintiffs' motion, there can be no question that plaintiffs' counsel possessed distinctive knowledge and specialized skill needful for this litigation. Indeed, the instant case is exactly the type of case in which a deviation from the statutory cap is appropriate, and Federal defendants do not argue otherwise in their opposition to plaintiffs' motion.

Medicaid law is recognized as one of the most complex, arcane, and difficult areas of practice. As a result, very few attorneys are competent to practice in this area. Wulsin Decl. at ¶ 5. Plaintiffs' lead counsel for much of this case, Evelyn Frank, was considered one of the, if not the, most knowledgeable and outstanding attorney litigating complex health care/Medicaid issues in California, and perhaps the country. *See* Bird Decl. at ¶¶ 2, 7. Finberg Decl. at ¶ 6 (Evelyn Frank had a deeper substantive grasp and greater intuitive understanding of … Medicaid … than any legal services lawyer I have ever known. She was considered by many, including myself, to be the most able legal advocate for Medicaid recipients in the country"); Wulsin Decl. at ¶ 5. Plaintiffs' co-counsel, Michael Parks, Mark Regan, and Jane Perkins are also highly experienced, well regarded, litigators in the area of Medicaid benefits. *See* Finberg Decl. at ¶¶ 3–4, 9; Parks Decl., Regan Decl., Perkins Decl. We are amply satisfied that plaintiffs' counsel possessed the type of distinctive knowledge that Congress contemplated would warrant a deviation from the statutory cap.

This Court is also convinced, and it is undisputed in the record, that counsels' highly specialized expertise was "needed,"—indeed essential—to the success of this action. *See e.g.* Finberg Decl. at ¶ 9 (The *"Sneede* litigation is known throughout the legal services community as one of the most complicated and nettlesome cases ever brought. For years, it has been discussed at conferences … as the sort of case that only Eve-

lyn could bring, and that only a very few of us were capable of fully understanding").

Finally, we are satisfied that plaintiffs could not have found alternative counsel with the necessary expertise who would have been willing to take this case at the $75.00 statutory rate. *See Golden Gate Audubon Society v. U.S. Army Corps of Engineers*, 732 F.Supp. 1014, 1022–23 (N.D.Cal.1989). According to the unrebutted declarations submitted to this Court, there are no attorneys in private practice in the state of California that practice extensively in the Medicaid field. Finberg Decl. at ¶ 12; Bird Decl. at ¶ 4. Moreover, given the complexity of the Medicaid field, and scope and difficulty of this case, it is unfathomable that any such attorney, should one exist, would agree to represent plaintiffs in this case for the statutory rate of $75.00.

Accordingly, we find that plaintiffs' merits counsel are not subject to the $75.00 statutory rate but rather are entitled to compensation at "prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A).

Plaintiffs have submitted declarations from partners at San Francisco firms which provide persuasive evidence of the market rate in the Bay Area for litigators with experience equivalent to that possessed by plaintiffs' counsel. *See* Declarations submitted by Wald (of Heller, Erhman, White & McAuliffe), Meadows (of Keker, Brockett & Van Nest), and George (of McCutchen, Doyle, Brown & Enesen). The hourly rates requested by plaintiffs' merits counsel, set forth below, are all either at or below these market rates.

| | | |
|---|---|---|
| Evelyn Frank | (1975) | $320 |
| Michael Parks | (1968) | $265 |
| Jane Perkins | (1981) | $225 |
| Mark Regan | (1981) | $210 |

Although Federal defendants have not disputed that the requested hourly rates reflect "prevailing market rates of the kind and quality of the services furnished," we must nonetheless make an independent finding that such rates are reasonable before any

award is made. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993); *Dease v. City of Anaheim*, 838 F.Supp. 1381 (C.D.Cal. 1993).

We have carefully reviewed the declarations submitted by Wald, Meadows, and George, as well as the declarations submitted by Parks, Perkins, and Regan, and Ronfeldt (on behalf of Frank), detailing the background and experience of counsel. Based on these declarations, and the Court's own familiarity with prevailing market rates in this area, as well as its first hand knowledge of the skill and exemplary performance of counsel in litigating this action, we are amply satisfied that the requested hourly rates are reasonable, and represent "prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A).[8]

### 3. Adjustment of the Lodestar

Based on the above, the lodestar award amounts to $218,805 less the amount of fees incurred in defending the appeal of the June 8, 1990 order. *See* n. 6, *supra*. The lodestar is a presumptively reasonable rate and neither plaintiffs nor defendants seek an adjustment upward or downward. The Court is also independently satisfied that the lodestar represents a reasonable fee in this case. *Gates v. Deukmejian*, 977 F.2d 1300, 1305 (9th Cir.1992).

### 4. Costs

■ Plaintiffs request reimbursement of their out-of-pocket costs in the amount of $6,703.71. It is well established that such costs are recoverable as part of a fee award, and defendants registered no objection to the amount of costs requested in plaintiffs' opening memorandum. Accordingly, plaintiffs shall be awarded their costs in this amount. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216, n. 7 (9th Cir.1986), *amended*, 808 F.2d 1373 (9th Cir.1987).

### IV.

### *FEES ON FEES*

■ Plaintiffs who are otherwise eligible for fees under EAJA are also entitled to

---

**8.** While the hourly rate requested for Evelyn Frank may be at or near the high end for a 1975 graduate, such a rate is entirely appropriate in this case, given Frank's exceptional knowledge, skill, and experience in complex Medicaid litigation. *See* Bird Decl., Finberg Decl.

recover fees for the time they expend litigating their request for fees, without regard to whether the government's position with respect to the fee request was substantially justified. *Jean,* 496 U.S. 154, 110 S.Ct. 2316; *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir.1986).

■ Accordingly, plaintiffs' special fees counsel, Altshuler, Berzon, Nussbaum, Berzon & Rubin, seek reimbursement for a total of 170 hours expended in recovering attorneys fees in this case (which total excludes any time spent solely on recovering fees from the State defendants). Rubin Suppl.Decl. at ¶ 6. This request is supported by declarations and contemporaneous time sheets, and reflects the exercise of significant billing judgment. Time that was duplicative or non-productive was excised, and no reimbursement is being sought for time spent by attorneys no longer at the firm. *See* Rubin Decl. at ¶¶ 5–7.

Again, based on the Court's familiarity with this case, and having reviewed the records submitted, we conclude that the number of hours requested is reasonable, particularly given that special fees counsel were required to establish a predicate for fees, in addition to addressing the many issues raised by the fee motion itself.

Notably, Federal defendants did not object to special counsel's fee documentation, nor did they assert that any of the hours requested were excessive or unnecessary. *See Gates,* 987 F.2d at 1397–98. However, as was the case with counsel for plaintiffs on the merits, plaintiffs' fee counsel did not allocate their time between the State and Federal matters until the filing of their reply brief. Accordingly, defendants will be given an opportunity to respond to that allocation.

■ With respect to the hourly rate, plaintiffs' counsel have not argued in their papers that any "special factor" warrants exceeding the $75.00 statutory cap for special fees counsel. 28 U.S.C. § 2412(d)(2). However, the Court finds that a cost of living increase is appropriate. Under the Ninth Circuit's formula, a cost of living adjustment currently adjusts the $75.00/hour statutory fee upwards to $120.39/hour. *Animal Lovers Volunteer Assoc., Inc. v. Carlucci,* 867 F.2d 1224, 1227 & n. 2 (9th Cir.1989). Utilizing this higher rate, plaintiffs' special fees counsel are entitled compensation in an amount of $21,250.

V.

*ORDER*

Accordingly, and good cause appearing, it is HEREBY ORDERED that:

1. Plaintiffs' Motion for Attorneys' Fees pursuant to 28 U.S.C. § 2412(d) of the EAJA is GRANTED consistent with this Order.

2. Within 7 days of the date of this Order, plaintiffs shall file a statement itemizing those hours expended in defending the appeal of the June 8, 1990 order, with a revised lodestar that excludes these hours.

3. Within 14 days of the date of this Order, Federal defendants shall file any objections they may have to plaintiffs' allocation of hours between the Federal, State, and joint Federal–State matters, with respect to both merits counsel and special fees counsel. If any such objection is filed, plaintiffs may file any response to such objection within 7 days of service of the objection. In addition, plaintiffs shall submit a final statement of hours expended by special fee counsel that includes any time spent (1) responding to Federal defendants' objections, filed pursuant to this paragraph, and (2) responding to paragraph two above.

IT IS SO ORDERED.